ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION



FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 DEC 19 AM 8: 35

CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| HENRY ERIC JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 311-039 |
| | ) | |
| JOSE MORALES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Johnson State Prison ("JSP") in Wrightsville, Georgia, is currently proceeding *in forma pauperis* ("IFP") in this action filed pursuant to 42 U.S.C. § 1983. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that this action be **DISMISSED** without prejudice and that Plaintiff's "Motion to Order Defendants Provide Specialist Medical Treatments . . ." (doc. no. 12) and "Motion for Default Judgment" (doc. no. 13) be **DENIED AS MOOT**.

### I. BACKGROUND

In his complaint, Plaintiff attempts to assert various claims concerning the conditions of his confinement at JSP. (See doc. no. 1 & Exs. 1-3.) In particular, Plaintiff alleges that he is wheelchair-bound due to disability and that he suffers from "congestive heart failure" and "kidney failure." (Id., Ex. 2, p. 6.) Plaintiff asserts that his "kidney failure" is severe and

that he needs dialysis or a kidney transplant. (Id.) Plaintiff also alleges that he has been confined in an isolation cell due to a disciplinary infraction. (See id.) According to Plaintiff, because his isolation cell lacks an emergency call button, he is unable to summon help in the case of a medical emergency; thus, he avers that prison officials at JSP have denied him the access to "24-hour emergency medical care and treatment" that he requires. (Id. at 5-6.)

Plaintiff further avers that, because his isolation cell is too small to accommodate his wheelchair, he is forced "to sit and sleep in his wheelchair 24 hours every day and night[]." (Id. at 6.) Curiously, he also claims that while sleeping in his bed, he is unable to use the breathing machine prescribed for his sleep apnea condition because the machine is plugged into an extension cord that does not reach the bed. (Id.) Plaintiff additionally complains that his breathing machine sits "on the back of a toilet filled with water where at any time the machine may slip electrocuting Plaintiff." (Id. at 7.)

Moreover, without providing any relevant dates, Plaintiff states in his complaint that he suffered severe neck injuries in a traffic accident while he was being transported by prison officials; he also states that these injuries were aggravated in two later incidents, one in which several pans of ice water fell on him and one in which he fell while showering. (See id. at 4-5.) Based on these allegations, Plaintiff attempts to assert § 1983 claims based on his conditions of confinement, as well as a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[1] (Id. at 15.)

---

[1] Plaintiff also attempts to assert claims based on allegations that prison officials confiscated his personal property and denied him his right to access to the courts by taking away his legal materials. (See doc. no. 1, Ex. 2, pp. 5, 11-13.) The Court will not recount these allegations in detail, as they have no relevance to the matter at hand.

2

In the Court's Order granting him permission to proceed IFP, it noted that he had three previous cases or appeals dismissed as being frivolous or malicious or for failing to state a claim, such that he was subject to the "three strikes" provision of 28 U.S.C. § 1915(g), a provision explained in more detail below. See infra Part II.A. However, the Court also noted that Plaintiff argued that his conditions of confinement placed him in imminent danger of serious physical injury, and it declined to recommend dismissal at that time. (See doc. no. 4, p. 3 n.1.) However, the Court specified, "Should it later be determined that Plaintiff was not in 'imminent danger of serious physical injury' at the time he filed this lawsuit, the Court may revisit the issue on its own initiative." (Id.)

Thereafter, pursuant to a request by the Court, counsel for Defendants made a special appearance to address Plaintiff's allegations regarding his conditions of confinement. (Doc. nos. 9, 10.) In particular, Defendant Ajibade, the Medical Director at JSP, filed an affidavit addressing the conditions of Plaintiff's confinement and his medical status. (Doc. no. 10, Ex. A (hereinafter "Ajibade Aff.").) Defendant Ajibade states that Plaintiff "is housed . . . in a climate controlled, ADA compliant dorm." (Id. ¶ 4.) Defendant Ajibade further attests that Plaintiff "participates in the General Medicine Chronic Care Clinic at [JSP]," which is reserved for inmates who have been diagnosed with three or more medical conditions. (Id. ¶ 6.) Plaintiff's diagnosed conditions include: "hypertension, Insulin Dependent Diabetes Mellitus ("IDDM"), and Thyroid Stimulating Hormone." (Id. ¶ 8.) As a clinic participant, Plaintiff "is scheduled for regular visits with medical staff for purposes of regularly monitoring his medical diagnosis and treatments." (Id. ¶ 7.) Moreover, Plaintiff sees a nephrologist on a bi-monthly basis for treatment and monitoring of his IDDM and associated

3

kidney problems. (Id. ¶ 10.)

Defendant Ajibade agrees with Plaintiff that his kidney condition should be treated with dialysis; indeed, he states that Plaintiff has been informed by medical staff on various occasions that he needs dialysis. (Id. ¶ 11.) However, Defendant Ajibade indicates that Plaintiff has declined dialysis treatments each time they have been offered. (Id.) Defendant Ajibade also attests that medical staff had to remind Plaintiff of the importance of taking his blood pressure medication after he had failed to take the medication as prescribed. (Id. ¶¶ 13-14.)

Defendant Ajibade states that Plaintiff is given a number of special allowances to account for his various disabilities and medical conditions, including assignment to a bottom bunk, access to a breathing machine, exemption from work details, and use of a wheelchair. (Id. ¶¶ 15-16.) Furthermore, Defendant Ajibade avers that Plaintiff "is able to perform his own activities of daily living . . . and is able to transfer himself into and out of his wheelchair." (Id. ¶ 17.)

Plaintiff submitted a response to the special appearance filing entered by Defendants and, in particular, to Defendant Ajibade's affidavit. (Doc. no. 11.) In his response, Plaintiff "strongly disagrees" that his living quarters are ADA compliant. (Id. at 1.) He states that the beds are only three feet from the ceiling, which has removable panels that inmates could use to store contraband and weapons, creating a hazard for infirm inmates such as himself. (Id. at 1-2.) He also complains that he is unable to maneuver his wheelchair in his living quarters without extreme difficulty. (Id. at 2.)

Plaintiff concedes in his response that he has refused dialysis treatments, stating his

4

"determination is to stall" such treatments until they are needed. (Id. at 3.) However, Plaintiff asserts that Defendant Ajibade's affidavit omits pertinent information. For example, he states that approximately 11 years ago, while incarcerated at a different facility, he was assigned to a work detail in which he had to remove asbestos, yet prison medical staff have never referred him to a physician specializing in asbestos-related injuries. (Id. at 2-3.) Also, Plaintiff reiterates that he suffered severe neck injuries when he was involved in a traffic accident as a passenger in a prison transport vehicle; he states that this event occurred in 2005. (Id. at 4.) Plaintiff also re-alleges that his injuries have worsened following a 2009 incident in which several pans full of ice cold water fell onto his head from a nearby food cart and a later incident in which he fell while showering. (Id. at 4-5.) Again, Plaintiff complains that the medical staff at JSP, including Defendant Ajibade, have refused to refer him to specialists for these injuries. (Id.)

Plaintiff also asserts that he suffers from congestive heart failure, a condition that Defendant Ajibade failed to note in his affidavit. (Id. at 5-6.) In addition, Plaintiff takes issue with Defendant Ajibade's assertion that he failed to take his blood pressure medication. According to Plaintiff, he was unable to take his blood pressure medication on the date in question because the medication was not dispensed to him. (Id.)

## II. DISCUSSION

### A. Three Strikes Provision

In light of the filings described above, the Court finds it appropriate to reassess whether Plaintiff should be allowed to proceed IFP in this case. A prisoner attempting to proceed IFP in a civil action in federal court must comply with the mandates of the Prison

Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996).

28 U.S.C. § 1915(g) of the PLRA provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.[2]

The Eleventh Circuit concluded that § 1915(g) does not violate an inmate's right to access to the courts, the doctrine of separation of powers, an inmate's right to due process of law, or an inmate's right to equal protection. Accordingly, the court upheld the constitutionality of § 1915(g). Rivera v. Allin, 144 F.3d 719, 721-27 (11th Cir. 1998), *abrogated on other grounds by* Jones v. Bock, 549 U.S. 199 (2007).

### 1. Prior Filing History

A review of Plaintiff's history of filings reveals that he has brought at least three cases or appeals that were dismissed for being frivolous or for failing to state a claim upon which relief may be granted: (1) Johnson v. Boone, No. 01-11103 (11th Cir. Oct. 29, 2001) (appeal dismissed as frivolous); (2) Johnson v. Johnson, CV 499-239 (S.D. Ga. Jan. 10, 2000) (case dismissed for failure to state a claim); and (3) Johnson v. Johnson, CV 495-032 (S.D. Ga. Mar. 21, 1995) (case dismissed as frivolous).[3] As these cases or appeals were

---

[2] The Eleventh Circuit noted that "[t]his provision of the PLRA, commonly known as the three strikes provision, requires frequent filer prisoners to prepay the entire filing fee before federal courts may consider their lawsuits and appeals." Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998) (internal citations omitted), *abrogated on other grounds by* Jones v. Bock, 549 U.S. 199 (2007).

[3] Of note, the third of case listed here, CV 495-032, counts as strikes under § 1915(g) despite being dismissed before the enactment of the PLRA on April 26, 1996. Rivera, 144

dismissed for being frivolous or for failing to state a claim, they qualify as strikes under § 1915(g). Because Plaintiff has at least three strikes under § 1915(g), he cannot proceed IFP in the present case unless he can demonstrate that he qualifies for the "imminent danger of serious physical injury" exception to § 1915(g).

### 2. Plaintiff Does Not Qualify for the "Imminent Danger" Exception

Before evaluating whether Plaintiff qualifies for the imminent danger exception, the Court must first determine which filings in this case are properly subject to review in making that determination. Section 1915(g), which simply provides that a prisoner who is subject to the three strikes provision may nevertheless proceed IFP if he is "under imminent danger of serious physical injury," is silent as to what material the Court may consider in determining whether the exception applies. The Court begins with the decision in Brown v. Johnson, in which the Eleventh Circuit conducted an imminent danger inquiry based on plaintiff's complaint, which it stated must be "construe[d] liberally and the allegations of which [must be accepted] as true." 387 F.3d 1344, 1350 (11th Cir. 2004); see also Jackson v. Jackson, 335 F. App'x 14, 15 (11th Cir. 2009) (*per curiam*) (construing liberally and accepting as true the allegations of the plaintiff's complaint in conducting imminent danger analysis); McAlphin v. Toney, 281 F.3d 709, 710 (8th Cir. 2002) (noting that "the well-pleaded allegations of a complaint must be taken as true" in conducting imminent danger analysis).

Notably, in Brown, the imminent danger inquiry was conducted at a stage in the case in which the complaint and amended complaint were the only pleadings available for review,

---

F.3d at 730.

7

and the allegations set forth in those pleadings provided adequate information for the Court to determine that the imminent danger exception had been satisfied. See Brown, 387 F.3d at 1346, 1349-50. However, courts faced with complaints whose allegations suggest but do not conclusively establish the applicability of the imminent danger exception have found it proper to defer conducting the imminent danger analysis until receiving additional information in subsequent filings from individuals with knowledge of the plaintiff's status. See, e.g., Riggins v. Culliver, Civil Action 08-0651, 2010 U.S. Dist. LEXIS 17166, at *6-7 (S.D. Ala. Jan. 11, 2010) (reviewing affidavits provided by defendants in three strike analysis), *adopted as opinion of district court*, 2010 U.S. Dist. LEXIS 16189 (S.D. Ala. Feb. 22, 2010); Allen v. Barnes, Civil Action 08-0322, 2009 U.S. Dist. LEXIS 51641, at *19-24 (S.D. Ala. June 10, 2009) (reviewing report from treating physician containing affidavit and medical records where allegations in complaint were insufficient to conduct adequate imminent danger analysis), *adopted as opinion of district court*, 2009 U.S. Dist. LEXIS 51611 (S.D. Ala. June 18, 2009).

The Court finds that this latter approach is warranted in the instant case. The allegations in Plaintiff's original complaint, especially those concerning his physical injuries and medical conditions, suggested that he *might* qualify for the imminent danger exception. However, the complaint omitted much pertinent information, such as relevant dates and the extent of the medical care being provided for Plaintiff's various conditions. Accordingly, the Court will now determine, based on the allegations in Plaintiff's complaint, as well as the information in Defendant Ajibade's affidavit and Plaintiff's response, whether Plaintiff

qualifies for the imminent danger exception.[4]

In order to come within the imminent danger exception, a prisoner must be in imminent danger at the time he files suit in district court, not at the time of the alleged incident that serves as the basis for the complaint. Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999). In addition, the Court looks to Brown, *supra*, for guidance on the issue of what constitutes "imminent danger of serious physical injury." In Brown, the plaintiff alleged a total withdrawal of treatment for serious diseases, as a result of which he suffered severe ongoing complications; thus, the Eleventh Circuit concluded that, viewed together, the afflictions of which the plaintiff complained (including his HIV and hepatitis), and the alleged danger of more serious afflictions if he was not treated, constituted imminent danger of serious physical injury. 387 F.3d at 1346, 1349-50.

Here, Plaintiff suffers from serious medical conditions, but unlike in Brown, his allegations fail to establish the likelihood of imminent physical harm caused by Defendants' conduct. For example, he has not alleged total withdrawal of treatment, and it is undisputed that he receives regular medical care for his conditions. (See Ajibade Aff. ¶¶ 6-10.) The fact that Plaintiff has not been referred to specialists for additional medical care is not adequate to show that his care is so inadequate that he is in imminent danger of serious physical harm. Cf. Brown, 387 F.3d at 1346, 1349-50. Moreover, while Plaintiff initially alleged in his complaint that he was being denied needed dialysis treatments for his diabetic condition, he failed to divulge that the medical staff at JSP had repeatedly recommended such treatments

---

[4] The Court will continue to liberally construe Plaintiff's filings and to accept Plaintiff's well-pleaded allegations as true, consistent with Brown, but will use the supplemental information available to fill in gaps as needed to conduct a complete analysis.

and that he refused them – a fact he now concedes. (See doc. no. 1, Ex. 2, p. 6; Ajibade Aff. ¶ 11; doc. no. 11, p. 3.)

Furthermore, it is apparent that Plaintiff's stay in isolation was short term and prison officials have provided Plaintiff with adequate monitoring, including regular appointments with medical staff. (See Ajibade Aff. ¶¶ 7-10.) In light of this monitoring, Plaintiff's allegation that he might suffer a medical emergency and be unable to call for immediate help is insufficient to demonstrate that he is under imminent danger of serious physical injury. This allegation is too speculative to support a finding of imminent danger, and, in any event, Plaintiff is not entitled to be provided with an emergency call button such that he can summon immediate emergency care at any time. See Parsons v. Wilkinson, No. 97-3011, 1998 U.S. App. LEXIS 28343, at *5 (6th Cir. Nov. 4, 1998) (holding that, where prison officials had established a comprehensive plan for prisoner's treatment and monitoring, he was not entitled to an emergency call button in segregated-confinement cell); Williams v. Cass County Sheriff Dep't, Case No. 1:09-cv-590, 2009 U.S. Dist. LEXIS 67297 (W.D. Mich. July 30, 2009) (rejecting contention that prisoner was entitled to be confined in a cell with an emergency call button).

Plaintiff's allegation that his breathing machine, which he says that he keeps on the back of his toilet, *might* fall and electrocute him is likewise based on speculation; moreover, Plaintiff fails to explain why he must keep the machine on the back of his toilet, and he does not allege that Defendants force him to keep it there. (See doc. no. 1, Ex. 2, p. 7.) Similarly speculative and insufficient is Plaintiff's assertion that he is unsafe because other inmates might store weapons or contraband in the ceilings and somehow cause Plaintiff harm. (See

doc. no. 11, pp. 1-2.) Plaintiff does not allege that other inmates have actually stored such material in the ceiling or specifically threatened him with such activity.

Furthermore, Plaintiff's allegations about having to remove asbestos in a previous facility, suffering neck injuries in a prison transport vehicle accident, having pans full of water fall on him, and falling while showering are all events involving past injuries that fail to establish imminent danger of serious physical harm at the time he filed his complaint. See Medberry, 185 F.3d at 1193. Plaintiff's disagreement with Defendant Ajibade over whether his living quarters are ADA compliant is irrelevant; such disagreement concerns the merits of Plaintiff's ADA claim, and his allegations about being unable to adequately maneuver his wheelchair do not establish an imminent danger of harm.

In sum, Plaintiff has failed to demonstrate that he should be excused from paying the full filing fee under the "imminent danger" exception of § 1915(g). The instant case should therefore be **DISMISSED** without prejudice so that Plaintiff may, if he wishes, initiate a new lawsuit, with regard to which he must file a new complaint and prepay the entire filing fee. Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002) (*per curiam*).

### B. Miscellaneous Pending Motions

After submitting his complaint, Plaintiff proceeded to file various motions in this case, including a "Motion to Order Defendants Provide Specialist Medical Treatments for Plaintiff Broken Neck" (doc. no. 12) and a "Motion for Default Judgment" (doc. no. 13). Defendants filed responses in opposition to the latter of these motions. (Doc. nos. 14, 18.)

In light of the Court's determination that this case should be dismissed pursuant to the three strikes provision of § 1915(g), these motions should be **DENIED AS MOOT**.

Moreover, the Court notes that, even if it had not recommended dismissal under § 1915(g), Plaintiff's motions would be subject to denial. As Defendants point out in their response (see doc. no. 14), Plaintiff's "Motion for Default Judgment" is premature in that Plaintiff filed it prior to the Court screening Plaintiff's complaint under the IFP statute and without any order that service of process be affected on any Defendant. See 28 U.S.C. §§ 1915(e) & 1915A.

Plaintiff's "Motion for Specialist Medical Treatment" consists of a request for preliminary injunctive relief in the form of an order requiring that Plaintiff be provided with specialized medical treatment. A party moving for injunctive relief must show the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson County, 720 F.2d. 1511, 1519 (11th Cir. 1988)).

Here, for the reasons set forth above in Court's imminent danger analysis, Plaintiff has not shown that the medical care provided for his conditions is inadequate; rather, he argues that he is not getting the specialized treatment he wants. However, a "simple difference in medical opinion" does not rise to the level of constitutional violation. Waldrop

v. Evans, 871 F.2d 1030, 1033 (11th Cir.1989). Plaintiff has therefore plainly failed to demonstrate a substantial likelihood of success on the merits with regard to his request for preliminary injunctive relief, which is a requisite element for establishing entitlement to such relief. See All Care Nursing Serv., Inc., 887 F.2d at 1537. Moreover, Plaintiff has not attempted to meet his burden as to the remaining elements of the preliminary injunction inquiry. As a result, Plaintiff's request for preliminary injunctive relief, like motion for default judgment, is without merit in addition to being moot.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that this action be **DISMISSED** without prejudice and that Plaintiff's "Motion to Order Defendants Provide Specialist Medical Treatments..." (doc. no. 12) and "Motion for Default Judgment" (doc. no. 13) be **DENIED AS MOOT**. As explained previously, if Plaintiff wishes to proceed with the claims raised in this lawsuit, he should be required to initiate a new lawsuit by submitting a new complaint and prepaying the entire filing fee.

SO REPORTED and RECOMMENDED this 19th day of December, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE